Filed 7/31/26  In re Patricia W. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re PATRICIA W. et al., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>PAUL W.,<br><br>　　　Defendant and Appellant. | A172806<br><br>(Alameda County<br>Super. Ct. Nos. JD037257-01,<br>JD037258-01, JD038245-01,<br>JD038246-01, JD038247-01) |

Paul W. (father) appeals from a March 2025 disposition order removing his minor children from his physical custody; placing them with their mother, Patricia A. (mother); and terminating the court's dependency jurisdiction. (Welf & Inst. Code, § 361.2; statutory references are to this code.)  Father does not contest the order removing his children, but he contends the court erred by terminating jurisdiction instead of maintaining oversight to ensure the children are safe with mother.  We affirm.

## BACKGROUND

This appeal involves five siblings.  In February 2024, the Alameda County Social Services Agency filed a dependency petition on behalf of

1

father's two oldest children, Patricia and Paul. The following October, the agency filed another original petition on behalf of father's three younger children, S.W., M.W. and Z.W. The court conducted separate proceedings as to each petition for several months, but the matters were joined before the court made its dispositional findings.

***Older Siblings' Petition***

In February 2024, Patricia and Paul ran away from father's home and went to a youth shelter. Patricia, who was 16, and 15-year-old Paul reported that father was physically and verbally abusive. An agency social worker met with father at his home. Father denied the minors' allegations and "shifted blame" to them. He had to be redirected several times, as he would not answer questions directly and attempted to shift the focus off himself. Father told the social worker that he needed to hold Patricia and Paul accountable for their actions, and he believed they were being coached by mother to make false allegations. Father reported that he and mother had a contentious divorce, and that she had engaged in domestic violence in the past.

The social worker met with mother over the phone, as mother lived out of state. Mother reported that father had been physically abusive of their children for a long time. She also said that father restricted her access to the children, and controlled her telephone visits by insisting they be conducted over speaker phone. Mother also reported that father had physically abused her in the past and lied about his behavior when she tried to obtain a restraining order against him. She wanted the children to live with her and intended to file for custody.

The agency took Patricia and Paul into protective custody, placed them in the home of their maternal grandmother (grandmother), and filed a

dependency petition pursuant to section 300, subdivisions (b)(1) [substantial risk of harm] and (g) [no provision for support]. As support for the subdivision (b)(1) allegation, the agency alleged father inflicted "excessive physical discipline" on both minors, including by hitting them with a belt, pushing them against a wall, and slapping them in the face. The agency alleged jurisdiction under subdivision (g) on the ground that the "whereabouts, ability and interest" of mother to care for the minors was unknown at that time.

On February 28, 2024, Patricia and Paul were detained from father. They were doing well with grandmother but wanted to be placed with mother. The court ordered the agency to arrange visitation for father with Patricia only, finding that visits with Paul would be detrimental to his well-being and not in his best interest. Mother appeared through counsel, denied the section 300, subdivision (g) allegation, and requested that the agency place the children with her in Texas. A jurisdiction/disposition hearing was held in March, but was continued for a contest.

Meanwhile, the agency filed three amended petitions. In March 2024, the agency added an allegation under section 300, subdivision (c) that Patricia was at risk of serious emotional damage as evidenced by suicidal ideation due to father's verbal abuse. And in June, the agency deleted the subdivision (g) allegation that the minors were left with no means of support.

In July 2024, the agency recommended that the court sustain the petition allegations, order that the minors remain out of father's care and make them court dependents. In addition, the agency recommended that the court place the minors in the custody of mother and dismiss the dependency. The agency reported, among other things, that Paul provided detailed accounts of father's physical abuse, and also expressed concern for his

3

younger siblings who still lived with father. Patricia told the social worker she ran away because she felt father did not want her as his daughter, and she also provided details about father's physical abuse.

The agency also reported that father had not cooperated with efforts to obtain the minors' personal belongings, social security cards, and financial savings from father's home. When he finally delivered clothing and money, the minors were upset because father had kept most of their savings and sent clothing that either did not belong to them or no longer fit. The social worker attempted to follow up with father. Initially, he was not responsive, and when he returned the social worker's call, father was angry that the agency was not supporting him.

The contested jurisdiction/disposition hearing commenced in August 2024, and was conducted over several months, with the court hearing testimony from multiple witnesses including Patricia, Paul, and both parents. Prior to the first session of the hearing, the court granted the agency's request for the minors to have a visit with mother, who was living in Arizona at the time, which was followed by a second visit over Labor Day weekend. And in November 2024, the minors were placed with mother.

### Younger Siblings' Petition

Meanwhile, on October 1, 2024, the agency filed a petition on behalf of Z.W., M.W. and S.W., whose ages ranged from eight to 13. Dependency jurisdiction was alleged under section 300, subdivision (b)(1), on the ground that father had subjected the children to "excessive physical discipline, placing [them] at substantial risk of physical harm or neglect."

The decision to file a petition on behalf of the younger children was precipitated by an incident the previous month, when mother was in town to attend a family reunion. Mother reported that she was driving the children

4

to the reunion when they told her that father had been physically abusing them and they did not feel safe, and she responded by making a police report. All three children confirmed to the agency caseworker that father had hit them on multiple occasions. Reported incidents included occasions when father hit one or more of the children with a belt, with his hand, and with various other items, sometimes " 'for no reason.' " The children were taken into protective custody and released to grandmother for a temporary visit.

On October 2, 2024, the court detained the children from father and released them to the care of mother. A jurisdiction/disposition hearing was set for October 30. The agency recommended that the court sustain the petition allegations, order that the minors remain with mother, and dismiss the dependency with custody orders. The agency reported that after the children were taken into protective custody, the social worker attempted to contact father by phone and letter, but received no response prior to October 23, when he showed up at the agency. Father denied the minors had been physically harmed, and he attributed marks on M.W. to her falling during cross-country practice. Father acknowledged that some people thought his strict parenting style was " 'old school,' " but he denied using physical objects such as a belt to discipline his children. Father also accused mother of abducting the children from his home and coaching them to say negative things about him. At the October 30 hearing, father objected to the agency recommendation; the court then ordered visitation for father and continued the matter for a contest.

The contested jurisdiction/disposition hearing was set for January 22, 2025. The agency filed an addendum in support of its recommendation. The social worker had completed a home visit in Arizona the previous November, and found mother's home was clean and appropriate and the minors were

doing well. They all reported that they had felt unsafe in father's home, although M.W. wanted to visit him. The children were aware mother planned to move back to Texas with the family, and they expressed no concerns about that plan.

At the first session of the contested hearing for the younger children, the parties stipulated that the court could consider prior evidence and testimony from the older siblings' matters and that going forward, the petitions would be joined and heard together. Thereafter, the court received additional testimony and evidence at hearings in February and March, which included testimony from each of the three youngest children.

On March 12, 2025, the agency filed an addendum report, which summarized a recent face-to-face home visit with mother and the minors in Texas. The agency reported the children were doing well, providing details. It also provided information about an altercation between two of the brothers that had been referenced at one of the hearings. The children did not recall how the dispute began, but they reported it was resolved amicably and that mother had imposed consequences by temporarily reducing or withholding the boys' allowances. The agency also summarized the social worker's interview with mother, who reported the family was doing much better and adjusting to their new situation; described improvements in the children's attitude and behavior; and expressed pride in them.

### *Disposition*

The contested jurisdiction/disposition hearing concluded on March 17, 2025, with the court hearing arguments and announcing its decision.

County counsel argued the agency met its burden of proving allegations in both petitions and stood by its recommendation for the court to exercise dependency jurisdiction, remove the children from father, and implement

custody orders placing them with mother. Counsel argued the children's testimony was credible proof they faced a risk of serious harm if left in father's care and that father's version of events was not supported by evidence. As for custody, the agency had visited mother's home and did not see any safety issues, whereas there were safety issues at father's home. Mother and counsel for the minors concurred with the agency, arguing the children's testimony was credible evidence of father's physical and emotional abuse, and that the children should continue to reside with mother.

Father argued the agency failed to proffer clear and convincing evidence to support removing the children from his custody. His counsel reviewed the evidence in detail, highlighting perceived inconsistencies in the children's testimony, and arguing that evidence mother had agreed to give the children gifts and privileges showed the children had incentives to lie. Father's counsel also emphasized that, aside from the children, all other witnesses who testified said they never saw father physically discipline the children. Ultimately, father asked for the court to "find that there is substantial doubt that [father] abused his children, and also to deny jurisdiction in this matter."

Before the matter was submitted, minors' counsel requested that the court make a finding as to all of the children that visitation with father would be detrimental and not in their best interest. The court denied that request, concluding the evidence did not support detriment findings as to any of the children, with the exception of Patricia.

Before announcing its decision, the court acknowledged some unusual circumstances. To begin with, the parents had previously been involved in a contentious divorce, which resulted in the family court awarding custody of the children to father. Moreover, it seemed apparent to the court that the

7

children probably would have had a preference to live with mother, even if the dependency petitions were never filed; father had many restrictions, was very controlling, and his house was "less fun for teenagers," the court opined. In addition, the court found evidence suggesting that mother and perhaps the older children had encouraged or offered enticements to the younger children to move out of father's house. The court stated that it took these circumstances into account when evaluating the children's credibility.

Ultimately though, each child had testified about father's abusive behavior and the court found that, despite some variations, the children's testimony was internally and logically consistent, and the various accounts were consistent with each other. Moreover, the children offered similar details but did not say the exact same thing, which was an indication they had not been coached. Thus, despite concerns about credibility, the court ruled that it would not disregard the children's testimony. Beyond that, father's witnesses were not true impeachment witnesses; their testimony was either irrelevant or not dispositive of a material factual issue, the court found.

The court then addressed each petition separately, making findings as to whether specific allegations were proven true. For example, with regard to the older siblings, the court sustained an allegation that father hit Patricia with the palm of his hand, but deleted an allegation that he made her nose bleed. The court also sustained an allegation that father hit Paul with a belt leaving lash lines, but deleted a clause alleging the marks were all over Paul's back. After amending factual allegations in both petitions, the court found jurisdictional allegations to be true. The children were declared dependents and the court found that removal from the physical custody of

father was necessary due to the substantial danger he posed to their physical health and safety or physical and emotional wellbeing.

The court also ordered that the children be placed with their previously noncustodial parent, in the approved home of mother, who would become their caretaker. Father was to have supervised visitation as to all children, except for Patricia. And the parents were to share legal custody of all children, except for Patricia (who is, in any event, no longer a minor). Visitation was ordered for a minimum of once a month for four hours, and those costs were to be borne by mother alone. The court ordered the agency to provide custody orders, and inquired whether the parties had any questions about custody. Father's counsel confirmed father's understanding that he could go to family court if he wished to request a change in custody. Finally, the court found that "based upon" its orders regarding custody, the court would "terminate juvenile court jurisdiction," staying the termination order until the custody orders were filed.

## DISCUSSION

Father contends the disposition order must be reversed because the juvenile court erred by terminating its jurisdiction. According to father, safety concerns associated with placing the children with mother warranted ongoing supervision by the dependency court. We conclude that father forfeited this claim and that he also fails to establish error.

After the protracted evidentiary hearing, the juvenile court made a series of related but distinct findings. First, the court exercised jurisdiction over the children and removed them from father's custody. (§ 361, subd. (c)(1).) Findings supporting removal of the children from father were detailed and extensive. Father does not challenge them on appeal.

9

Once the children were removed from father, the court was required to place them with mother, their previously noncustodial parent who had requested custody, unless it found that placement would be detrimental to their safety, protection, or physical or emotional well-being. (§ 361.2, subd. (a).) Father did not object that placing the children with mother would be detrimental to their safety. Nor does he attempt to pursue the issue on appeal; father articulates no factual or legal basis for concluding that placement of the children with mother was detrimental to their safety or well-being.

Once the court decided to place the children with their nonoffending noncustodial parent, it had authority under section 361.2, subdivision (b) to do one of three things: (1) grant the nonoffending parent custody and terminate the court's jurisdiction; (2) grant the nonoffending parent custody subject to the jurisdiction of the court to complete a home visit to alleviate expressed concerns about the home raised by the child's current caregiver; or (3) grant custody to the nonoffending parent subject to ongoing court supervision, in which case reunification services could be provided to one or both parents. (*Ibid*.)

Father contends that the court erred by failing to select option (3). This claim is forfeited because father did not object when the court terminated its jurisdiction. (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 221–222.) On the contrary, father asked the court not to exercise dependency jurisdiction over the minors. And after that request was denied, father made no objection when the court indicated it would grant custody to mother and then terminate its jurisdiction. Permitting father to change position and adopt a materially different theory on appeal would " ' "not only be unfair to the trial court, but manifestly unjust to the opposing litigant." ' " (*Sumner Hill*

10

*Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1027.) "We have the discretion to consider for the first time on appeal an issue of law based on undisputed facts, but we will not consider a new issue where the failure to raise the issue in the trial court deprived an opposing party of the opportunity to present relevant evidence." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1409.) "[T]his rule 'is to be stringently applied when the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial.'" (*Koehl v. Verio, Inc.* (2006) 142 Cal.App.4th 1313, 1339.)

Father argues he may raise this issue for the first time on appeal because the court had a sua sponte duty to consider retaining jurisdiction. We are not persuaded by this conclusory assertion, unsupported by relevant authority. Importantly, the dependency court became involved with this family *solely* because of safety risks created by father, and that problem was rectified by granting custody to the children's mother. If father believed otherwise, we think it was incumbent on him to raise that issue below so that it could have been addressed at the evidentiary hearing. Alternatively, if this claim is not forfeited, it fails on its merits.

The decision whether to terminate jurisdiction when a minor is removed from a parent and placed with a nonoffending parent is reviewed for abuse of discretion. (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1135 (*Austin P.*).) We find no abuse of discretion here, where the record shows that the problem that led to the dependencies was addressed by removing the children from father; the children were all placed, without objection, in the home of a previously noncustodial parent; and mother's home was assessed and found to be safe.

11

Father argues the court did abuse its discretion because it terminated jurisdiction without finding that continued supervision was unnecessary to protect the children. According to father, terminating jurisdiction at the disposition hearing is proper only in an unusual case, and cannot be justified absent a finding that ongoing supervision is unnecessary. (Citing *In re Destiny D.* (2017) 15 Cal.App.5th 197 (*Destiny D.*).) This case does not fit that bill, father argues, because (1) mother was found to be an unfit parent when she and father divorced; (2) the juvenile court acknowledged mother and the children may have fabricated allegations against father; and (3) the court failed to address the "family's instability."

Courts have found that when a juvenile court is deciding whether to terminate jurisdiction after granting custody to a previously noncustodial parent, it should consider whether ongoing supervision is necessary. (*Austin P., supra*, 118 Cal.App.4th at p. 1135.) However, father appears to misperceive the juvenile court's broad discretion under section 361.2 to determine the best course of action after a dependent child is removed from the offending parent and placed with a nonoffending parent. *Destiny D.*, cited by father, was not decided under section 361.2 because the child in that case was released to her custodial parent after the court sustained jurisdictional allegations as to both parents. (*Destiny D., supra*, 15 Cal.App.5th at p. 206.) Given that procedural posture, the *Destiny D.* court's conclusion that the juvenile court did not exceed or abuse its discretion by terminating jurisdiction at the disposition hearing may have been an "unusual" outcome. (*Id.* at p. 211.) But, as *Destiny D.* illustrates, even when section 361.2 does not apply (as it does here), the juvenile court has broad authority to "enter orders to protect a dependent child and to reunite the family and terminate jurisdiction as quickly as possible," which "necessarily includes, in an

12

appropriate circumstance, discretion to terminate dependency jurisdiction when the child is in parental custody and no protective issues remain." (*Id.* at p. 207.)

Father mistakenly relies on *Austin P., supra*, 118 Cal.App.4th 1124, a father's appeal from a disposition order placing his dependent child with him under section 361.2 without terminating the court's dependency jurisdiction. (*Id.* at p. 1128.)  The appellate court rejected the father's contention that the juvenile court was required to grant him custody *and* terminate jurisdiction unless it found that such an order would be detrimental to the child.  (*Id.* at pp. 1128–1134.)  Instead, the *Austin P.* court concluded that the appellant failed to establish the juvenile court abused its discretion by adopting the agency's recommendation to retain jurisdiction when substantial evidence showed a need for continuing jurisdiction.  (*Id.* at pp. 1124–1135.)  In this case, the juvenile court reached a different conclusion about whether to retain jurisdiction, and father fails to establish that the court abused its discretion.  From early in the proceedings, the agency recommended that the court terminate jurisdiction after granting mother custody.  The court's decision to follow that recommendation was supported by substantial evidence, which showed that mother afforded the children a safe and stable home and that protective issues no longer remained after the children were removed from father's home.

Father's argument that ongoing supervision was required misconstrues isolated snippets of evidence.  To begin with, we reject father's contention that mother was previously found to be an unfit parent.  The 2024 divorce decree referenced in father's brief contains *no* express or implied finding as to the fitness of either parent.  A restraining order father obtained in 2020 was also admitted into evidence, but it contains no substantive finding or

13

information as to the reason the order was issued.[1]  Moreover, the order expired a few years before the dependency petitions were filed.

Next, father contends the court had a duty to retain jurisdiction after acknowledging the possibility that mother and the children fabricated the allegations against father.  Again father stretches the record; the court did not find that mother had lied, nor did it express concern about her credibility.  It found that evidence mother may have offered the children incentives for leaving father's home was relevant to the children's credibility.  Regardless, the credibility issues were ultimately resolved against father, and he has not challenged them on appeal.  The order removing the children from father is an important component of the substantial evidence supporting the court's decision that ongoing supervision was not necessary.

Finally, father's contention that the court should have retained jurisdiction to address the family's instability ignores substantial evidence that mother provided the children with a safe and stable home; the agency assessed mother's home, found no safety concerns, and reported the children were all doing well.  Father's purported concern about family stability focuses on his right to visitation.  Arguing that mother's move to Texas would likely prevent him from seeing the children, father contends the court should have retained jurisdiction to implement a visitation plan.  Again, father's argument is belied by the record.  The juvenile court made specific orders regarding supervised visits for four of the five children; ordered mother to pay for the costs of visits; and confirmed with father's counsel that father understood his right to seek a different custody order from the family court.

---

[1]  Mother testified that father obtained the restraining order after he and mother had a physical altercation early in the divorce case, and then father had the children's names added to the order.

14

## DISPOSITION

The disposition order is affirmed.

TUCHER, P. J.

WE CONCUR:

FUJISAKI, J.

PETROU, J.

*In re Patricia W. et al.* (A172806)

16